Date signed July 05, 2011



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| SHONNY SOLAYIDE OGUNFIDITIMI | : | Case No. 09-34778PM |
| | : | Chapter 13 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| SHONNY SOLAYIDE OGUNFIDITIMI | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 11-0282PM |
| | : | |
| DEUTSCHE BANK NATIONAL TRUST | : | |
|    COMPANY, c/o American Home | : | |
|    Mortgage Servicing, Inc. | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

     Debtor filed a bankruptcy case under Chapter 7 on December 18, 2009, that was converted to a case under Chapter 13 by an Order entered April 14, 2010.[1] This adversary proceeding came before the court for a pre-trial hearing on the Amended Complaint to Enforce Order Entered March 4, 2010 (the "Complaint"). That Order granted the Defendant Deutsche Bank National Trust Company (the "Bank") relief from the automatic stay of 11 U.S.C. § 362(a) so as to permit it to proceed with a foreclosure action as to property owned by the Plaintiff

---

    [1] Presumably the Defendant converted the case because she was not eligible for the entry of a discharge by virtue of receiving a prior discharge in a case under Chapter 7 commenced October 8, 2003, and thus within the 8-year bar of 11 U.S.C. § 727(a)(8).

located at 612 East 43rd Street, Baltimore, Maryland (the "Property") that the Plaintiff  proposed to surrender, per the statement filed pursuant to 11 U.S.C. § 521(a)(2)(A).  Plaintiff seeks an order of the court to compel the Bank to foreclose upon the Property, as well as reimbursement for the monies spent for the upkeep of the Property, presumably for the period following the entry of the § 362(a) Order for relief from the automatic stay.

The urgency of this situation to the Plaintiff is illustrated by the attachments to the Complaint.  These deal with criminal proceedings brought in the District Court of Maryland for Baltimore City where the Plaintiff was prosecuted for failing to register the Property, receiving a verdict of Probation Before Judgment and being fined $100.00 plus costs.  Various notices sent by the Housing Authority of Baltimore City and the Baltimore City Department of Housing and Community Development regarding health and environmental violations also appear of record. In short, Plaintiff faces continual prosecution for failing to maintain property in which she has no equity, does not wish to possess and which she seeks to surrender to the holder of the deed of trust secured by the property.  On the other hand, the secured party apparently has no interest in capturing whatever equity it may have in this property.

There was no response to the Complaint.  While failure to respond might be attributed to the failure of the Plaintiff to serve the Amended Complaint upon the Bank, as no affidavit of summons with respect thereto appears on the docket, the court will treat this as if a default had been entered and the Plaintiff subsequently filed a motion for default judgment.  The entry of default results in an assumption that "the facts (but not conclusions)" set forth in the Complaint are "true for purposes of the request by [the plaintiff] for entry of judgment by default." *In re Goycochea*, 192 B.R. 847, 847-48 (BC Md.1996).  *Accord In re Carroll*, 237 B.R. 872, 873 (BC Md.1999).  By a default, however, a party admits only the well pleaded allegations of facts such as liability.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-781 (CA4 2001).   The party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (CA5 1975); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-536 (D. N.J. 2008).  *See Thomson v. Wooster*, 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed.105 (1885) (default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill assumed to be true," and not "as of course according to the prayer of the bill").  After a default, it remains for the court to determine whether the unchallenged facts constitute a legitimate cause of action.

The court must dismiss this case because the Complaint does not state a cause of action.

The Order sought to be enforced did not compel any action on the part of the Bank. All it did was to allow the Bank to proceed to exercise its rights under the deed of trust. To use the vernacular, the Order did not compel it to eat dirt. Does the termination of the automatic stay, combined with a debtor's 11 U.S.C. § 521(a)(2)(A) statement of intention to surrender property burdened by a security interest, impose an affirmative duty upon the creditor to take any action? The court thinks not. Two cases approach this issue. *See In re Canning*, 442 B.R. 165 (B.C. Me. 2011), and *In re Pratt*, 462 F.3d 14 (CA1 2006). *In Pratt*, the court held that a creditor whose claim was secured by an interest in a Chapter 7 debtor's automobile did not violate the discharge injunction[2] by refusing to repossess it at the end of the 30-day period established by 11 U.S.C. § 521(a)(2)(A), as implemented by 11 U.S.C. § 362(h). The court explained:

> Subsection 521(a)(2) does not, however, define the term "surrender." Since Congress did not use the term "deliver," however, one reasonably may assume that "surrender" does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor. *See*, *e.g.*, *In re Cornejo*, 342 B.R. 834, 836-37 (Bankr. M.D. Fla.2005). FN4  Thus, the most sensible connotation of "surrender" in the present context is that the debtor agreed to make the collateral available to the secured creditor- *viz.*, to cede his possessory rights in the collateral-within 30 days of the filing of the notice of intention to surrender possession of the collateral. Similarly, nothing in subsection 521(a)(2) remotely suggests that the secured creditor is required to accept possession of the vehicle at the end of the 30-day period, as such a reading would be at odds with well-established law that a creditor's decision whether to foreclose on and/or repossess collateral is purely voluntary and discretionary. Thus, we agree with the GMAC contention that the Pratts' surrender did not require that it repossess the vehicle if GMAC deemed such repossession cost ineffective.

462 F.3d at 18-19 (footnote omitted).

However, the court found GMAC's conduct in the circumstances to be objectively coercive and in violation of the discharge injunction. The vehicle was inoperable and needed to be towed to a junkyard that declined to accept it absent a valid lien release. GMAC was found to have engaged in willful misconduct.

In the *Canning* case, however, the court distinguished the holding of *Pratt* and found no violation of the discharge injunction by a mortgage lender's failure to either to institute

---

[2] In the circumstances, there is a distinction but not a meaningful difference between a violation of the automatic stay and a violation of the discharge injunction.

foreclosure proceedings or release its lien.  The court observed:

> *Pratt* held that a secured creditor could violate the discharge injunction by refusing to take possession of surrendered collateral or release its lien in certain circumstances. *See In re Pratt*, 462 F.3d at 19–20. The collateral at issue in *Pratt* was a "worthless" car for which the Court of Appeals could envision no "reasonable prospect" its sale would ever generate proceeds for the secured creditor. *Id.* at 20. Nonetheless, the secured creditor stood on its state law right to be paid in full before releasing its lien. *Id*. The debtors were faced with "the grim prospect of retaining indefinite possession of a worthless vehicle unless they paid the loan balance, together with all the attendant costs of possessing, maintaining, insuring, and/or garaging the vehicle." *Id*. The court determined that the secured creditor had not, and would not be able to, credibly provide an objectively reasonable justification for refusing to repossess the car or release its lien. It therefore held that the creditor had attempted to realize upon the discharged obligation in order to "coerce" a reaffirmation agreement from the debtors, frustrating their right to surrender the collateral and depriving them of their right to a "fresh start." *Id*.
>
> \*   \*   \*
>
> The analogy to *Pratt* is rough. The Cannings' argument neglects telling points that distinguish the two cases. Though HSBC is undersecured, its collateral is real estate, not personal property. The Cannings' demand of "foreclose or release, now" ignores the prospect that real estate values change (up, as well as down) over time. A critical component of *Pratt's* holding was the collateral's worthlessness and the fact that, unlike real estate, "vehicles rarely appreciate in value over time." *Id*. Moreover, unlike the Pratts' secured creditor, HSBC did not simply require that the Cannings "pay in full." Rather it responded by suggesting either a voluntary settlement or a "short sale." That invitation plainly reveals that HSBC sought to collect no more than the value securing its lien.

 *Id.* at 171-172 (footnote omitted).

The court concluded:

> HSBC violated the discharge injunction when it demanded payment from the Cannings and insisted their obligation to pay was unaffected by their bankruptcy discharge. It did not, however, violate the discharge injunction by failing to foreclose upon or release its mortgage on valuable real estate at the Cannings' post-discharge insistence.

*Id.* at 172.

Here, there is no issue that Debtor has a problem dealing with the Property.  There may be an answer to her dilemma, but the court is without authority to compel the Bank to exercise its foreclosure rights.  The Bank's interest in the Property will most likely dissipate the longer it

hesitates, but that is the Bank's decision.

      For the foregoing reasons, the Complaint will be dismissed.

cc:
Shonny S. Ogunfiditimi, 20006 Frederick Road, Unit 22, Germantown, MD 20876
Donya Zimmerman, Esq., 702 Russell Avenue, Suite 300, Gaithersburg, MD 20877
Kevin Feig, Esq., 1 South Street, Baltimore, MD 21202-3334
Deutsche Bank National Trust Company/American Home Mortgage Servicing, Inc.,
   c/o Bierman, Geesing, Ward & Wood, 4520 East West Hwy, Suite 200, Bethesda MD 20814

**End of Memorandum**